OPINION OF THE COURT
Martin Evans, J.
This is a petition to compel the Insurance Department of *19 the State of New York to disclose various documents submitted to it by Equitable Life Assurance Society (Equitable). Equitable, having intervened, joins with respondents in opposing the petition.
The department had, upon request of Equitable, given permission to use a method of computing dividends, known as the investment year method, for its ordinary life and individual annuity lines.
While the general principles of this method of computation are well known, the task of applying it to the large volume of individual policies is such that it can only be done effectively through the use of computers; and it requires that statisticians make certain assumptions as the base for the particular mathematical models which is chosen in each case.
Equitable submitted various data to the Insurance Department and it was upon the receipt and study of this data that the permission was given.
Petitioner, moving under article 6 of the Public Officers Law, known as the Freedom of Information Law seeks to obtain the underlying data that was submitted to the department. During argument the parties agreed that the case should be decided under the amended Freedom of Information Law (L 1977, ch 933) even though its effective date of January 1, 1978 is after the date of this motion.
The statement of intent in section 85 of the Public Officers Law appears in broad language. However, limitations are provided to protect individual privacy in section 87 (subd 2, pars [a]-[g]) of the Public Officers Law.
Information tht constitutes "trade secrets or are maintained for the regulation of commercial enterprise which if disclosed would cause substantial injury to the competitive position of the subject enterprise” are among the potential items. (Public Officers Law, § 87, subd 2, par [d].)
The court has been furnished, at its request, with the documents submitted by Equitable so that a determination could be made with regard to the applicability of the exemption contained in subdivision 2 of section 87 of the Public Officers Law.
It appears at the outset from the documents that Equitable was not in fact requesting permission to obtain a variance from a prescribed method of accounting, but in fact was giving up a deviation that it had obtained in 1962, and was notifying *20 the department of this. The department, in proper fulfillment of its mandate, requested further details, specifications and comparisons of the effect of the applications of various statistical assumptions.
It also was given a description of the computer program which Equitable intended to use as well as a detail of the mathematical models, procedures and hypotheses which were intended to be used.
Review of these documents leads to the conclusion that they were disclosed to the department in confidence. They were compiled at the request of the department for the regulation of the particular enterprise involved here or for the grant of permission, if that was necessary, to do this type of business, and there is no doubt that the computer programs, the mathematical models, procedures and statistical assumptions constitute trade secrets.
Petitioner claims that this is merely cost and pricing information which in no way constitutes a trade secret. While pricing information is readily available when a product is sold, and is no secret; costs, particularly when they depend not upon the purchase of open market commodities or the use of easily obtainable labor rates, but upon statistical assumptions; upon income derived from various investment and many other factors, may well be a trade secret. Certainly a computer program, developed by Equitable and not known to anyone else, is a trade secret; as are the particular mathematical models and assumptions used here.
It is also clear that there would be an unfair advantage to competitors of Equitable if this information were to be disclosed. An advantage, because they would be in a position to know how Equitable arrived at the costs and prices of newly issued insurance policies and could then adjust their own internal cost procedures to take advantage of that, and unfair, because they would have free access to the developed computer program and mathematical models without having to do the work, or undertaking the risk or expense, themselves. It is also clear that substantial injury to the competitive position of Equitable would occur if these were disclosed.
There were, among the documents submitted for in camera inspection, a few which did not have the obvious appearance of being within the exemption.
*21 A hearing was held at which the court reviewed those documents and directed their disclosure.
As to the balance, the petition is denied.